**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRIAR MEADOWS DEVELOPMENTS, | : | 10-cv-1012 |
| INC. and LIME RIDGE CENTER, LLC, | : | |
| | : | Hon. John E. Jones III |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTH CENTRE TOWNSHIP BOARD | : | |
| OF SUPERVISORS, FRANK C. BAKER, | : | |
| JAMES KNORR, and FRANK YORTY, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

**October 13, 2010**

## I.     INTRODUCTION

Before the Court in this action asserted under 42 U.S.C. § 1983 is

Defendants South Centre Township Board of Supervisors ("the Board"), Frank C.

Baker ("Baker"), James Knorr ("Knorr"), and Frank Yorty's ("Yorty")

(collectively, "Defendants"), Motion to Dismiss the Complaint pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for Summary

Judgment pursuant to Federal Rule of Civil Procedure 56 ("the Motion").  (Doc. 8.)

The Motion has been fully briefed (*see* Docs. 12, 24, 25) and thus is ripe for

disposition.  For the reasons articulated in this Memorandum, the Court shall grant

1

the Motion and dismiss the Complaint on 12(b)(6) grounds for Plaintiffs' failure to state a claim upon which relief could be granted. An appropriate Order shall enter.

## II.    STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(1), a court must distinguish between facial and factual challenges to its subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether the plaintiff has properly pled jurisdiction. *Id.* "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891). A factual attack, in contrast, challenges jurisdiction based on facts apart from the pleadings. *Mortensen*, 549 F.2d at 891. "When a defendant attacks subject matter jurisdiction 'in fact,' ... the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. In such a situation, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual

allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 129 S.Ct. At 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

4

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S.Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Briar Meadows Development, Inc. ("Briar Meadows") and Lime Ridge Center, LLC ("Lime Ridge Center"), (collectively, "Plaintiffs") commenced this action by filing suit in this Court on May 11, 2010.  (Doc. 1.)  Based upon the following facts[1], Plaintiffs assert three counts against Defendants: (1) deprivation of Plaintiffs' procedural and substantive due process rights secured by the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment"); (2) deprivation of equal protection of the law in violation of the Fourteenth Amendment; and (3) civil conspiracy.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

Briar Meadows held two option contracts to purchase two separate,

---

[1]In accordance with the standard of review, where appropriate all facts and reasonable inferences derived therefrom are viewed in the light most favorable to Plaintiffs as the non-moving party.

contiguous pieces of property in South Centre Township, Columbia County; the "Seesholtz parcel" and the "Schultz parcel." (Doc. 1 ¶¶ 12, 13.) Plaintiffs reserved the exclusive right to purchase each property, and subsequently exercised that right to purchase the Schultz parcel. (*Id.* ¶ 14.) To date, Briar Meadows retains the exclusive right to purchase the Seesholtz parcel. (*Id.*) The Schultz parcel is located partly in the Agricultural Zoning District and partly in the Commercial-Industrial Zoning District of South Centre Township. (*Id.* ¶ 17.) The currently unpurchased Sheesholtz parcel is located entirely within the Agricultural Zoning District. (*Id.*) Laura Baker, the mother of Defendant Baker, owns several adjacent properties zoned as Commercial-Industrial, and operates several businesses on those properties. (*Id.* ¶ 18.)

On or about July 13, 2007, Briar Meadows applied for a Curative Amendment of the South Centre Township Zoning map to re-zone the Seesholtz and Schultz parcels from Agricultural to Commercial-Industrial. (Doc. 1 ¶ 19, 20.) After an eventual hearing[2], at which Plaintiffs allege Defendants acted poorly[3], the

---

[2]Present at the hearing on behalf of South Centre Township were Knorr and Yorty, the Board's Solicitor Gregory T. Moro, and Linus E. Fenicle, who was retained to assist Attorney Moro. Present on behalf of Briar Meadows were Donald E. Bower, president and owner, Jack Varaly, a land-use planner, Andrew Keister, an engineer and surveyor, Edward Huntington, an adjacent property owner, and Donald G. Karpowich, who represented Briar Meadows in the proceedings. (*See* Doc. 1 ¶¶ 26-28.)

[3]Plaintiffs claim that Knorr and Yorty displayed an extreme disinterest in the proceedings by rolling their eyes, laughing, whispering to one another, and reading magazines. (Doc. 1 ¶¶

Board closed the record and subsequently issued a decision denying the application

on December 5, 2007. (*Id.* ¶¶ 46-47.) Briar Meadows' request to reopen the

record to permit additional testimony was denied by the Board. (*Id.* ¶ 49.)

Briar Meadows appealed the Board's decision to the Court of Common

Pleas in the 26th Judicial District (Columbia County). In 2008, the Court of

Common Pleas granted Briar Meadows' motion for leave to present additional

evidence, and the case was remanded to the Board to hold a *de novo* hearing.

(Doc. 1 ¶ 52.) The Board petitioned for reconsideration of that order, and the

proceedings were stayed by a stipulation of the parties to allow Briar Meadows

time to apply instead for a use variance. (*Id.* ¶¶ 53-54.) The use variance was

likewise denied, and the Columbia County Court amended its previous order and

scheduled a hearing for purpose of taking additional testimony and evidence. All

Columbia County Court judges thereafter recused themselves from further

proceedings and, by order dated October 9, 2008, transferred the matter to the

Northumberland County Court of Common Pleas. (*Id.* ¶ 54.)

The Northumberland County Court conducted a hearing in 2009 at which

Briar Meadows introduced its plan for development of the lots if the Curative

Amendment was granted. On July 31, 2009, the Northumberland County Court

_____

41-42.)

denied Briar Meadows' request for a Curative Amendment, thereby affirming the Board's original decision.  The Northumberland Court found that Briar Meadows demonstrated no defect in the ordinance designating the land as Agricultural rather than Commercial-Industrial.  (*Id.* ¶ 56.)

Briar Meadows appealed the Northumberland County Court's decision to the Pennsylvania Commonwealth Court.  The Pennsylvania Commonwealth Court held, on August 18, 2010, that the decision of the Board comports with Pennsylvania law, and thereby affirmed the mandate of the Northumberland County Court.

While the appeal at the Commonwealth Court was pending, Plaintiffs filed the instant Complaint in this Court on May 11, 2010.  (Doc. 1.)  Plaintiff Lime Ridge Center joined Briar Meadows in the three-count Complaint, albeit for reasons unknown to the Court because the former is mentioned in a single paragraph that merely identifies its office address.  Pursuant to 42 U.S.C. § 1983, Plaintiffs assert that, based upon the above-mentioned facts, the Defendants deprived Plaintiffs of procedural and substantive due process, denied Plaintiffs equal protection of the law, and civilly conspired to do so.  Defendants posit that the Complaint should be dismissed for want of jurisdiction, specifically for lack of standing and pursuant to *Rooker-Feldman*, res judicata, and *Younger* abstention.

In the alternative, Defendants assert that the Complaint Should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a constitutional claim. We will address each aspect in turn below.

## IV. DISCUSSION

### A. Jurisdictional Issues[4]

#### 1. Standing

Defendants argue that the action *sub judice* must be dismissed because Plaintiffs lack standing to challenge the action sought to be adjudicated in this lawsuit. Article III of the United States Constitution limits the power of the federal courts to hear cases to "cases and controversies". U.S. CONST. art. III. Included in that requirement is the requirement that a federal plaintiff have standing to challenge the action sought to be litigated. As the Third Circuit has noted:

> The three elements necessary to satisfy the irreducible constitutional minimum of standing are:
> (1) the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
> (2) there must be a causal connection between the injury and the conduct complained of; and
> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[4]We note that we are addressing jurisdiction in fact, and thus attach no presumptive truthfulness to the Plaintiffs' allegations for jurisdictional considerations only.

*Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181 (3d Cir. 2006) (citing *United States v. Hays*, 515 U.S. 737, 742-43 (1995)).

Plaintiffs do not lack standing to assert this action. They assert a cognizable interest in seeking the Curative Amendment and claim that the denial of the amendment was injurious to that protected interest. Further, a favorable outcome in this Court would likely redress a violation of their civil rights, if such a violation exists. Thus, we are satisfied that Plaintiffs have standing to adjudicate this matter, and will not dismiss the Complaint on those grounds.

### 2. Abstention

Defendants contend that the Court cannot entertain this action pursuant to two separate abstention doctrines: *Rooker-Feldman* and *Younger.* Abstention is a judicially crafted doctrine, under which a federal court lacks jurisdiction over an action or issue that has been decided in a state judicial proceedings or over an important state issue that is more appropriately decided by a state court or agency. As the relevant jurisprudence has made clear, "abstention is the exception, not the rule, and is justified only in exceptional circumstances where the order guiding the parties to the state court [or previous decision] 'would clearly serve an important countervailing interest.'" *Izzo v. Borough of River Edge, et al.*, 843 F.2d 765, 767 (3d Cir. 1998) (quoting *Colorado River Water Conservation Dist. v. United States*,

424 U.S. 800, 813 (1976)).  As such, the Supreme Court of the United States has recognized very limited situations in which abstention is warranted.  We note at the outset that the underlying conflict in this action involves a land-use decision issued by a local body via procedures that were judicial in nature.  Zoning and land issues are traditionally significant to the States, and thus courts must be aware of the dangers of interfering with such traditionally local functions, particularly when a state court has already reviewed the decision at issue.  *See Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 410 (3d Cir. 2005).

The first-mentioned doctrine, *Rooker-Feldman*[5], precludes a federal district court from entertaining an action of the relief requested therein would reverse or void a state-court decision or holding.  Because the Supreme Court is the only federal court entrusted with the power to review state-court decisions, the doctrine strips a district court of jurisdiction "in cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting a district court to review and reject those judgments."  *Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)

[5]The Supreme Court enunciated this doctrine in two cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

("[*Rooker-Feldman* prevents a losing party] from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."). Thus, a district court may not entertain any claims that were actually litigated in state court or are "inextricably intertwined" with those claims already adjudicated in a state proceeding. *See Parkview Assoc. P'ship v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000). While parallel litigation may render a stay or dismissal appropriate under principles of comity, it does not trigger *Rooker-Feldman*. Therefore, in parallel litigation, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Exxon Mobil*, 544 U.S. at 193. Plaintiffs aptly delineate the four requirements of the *Rooker-Feldman* doctrine:

> (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

(Doc. 24 p. 9 (quoting *Exxon Mobil*, 544 U.S. at 287).)

Defendants posit that each issue raised by Plaintiffs in the Complaint is "intertwined with the issues in the state court action" and that the Complaint contains "substantially the same averments" and relies on the same facts as the state-court appeal. (Doc. 12 p. 12.) Thus, Defendants claim that granting the relief

Plaintiffs seek would require this Court to find that the Northumberland County Court's and Commonwealth Court's legal and factual decisions were erroneous.

Plaintiffs' retort is that Defendants' arguments with respect to *Rooker-Feldman* necessarily fail because elements (2) and (4) are unsatisfied, and therefore the Court need not abstain from hearing the action. First, Plaintiffs argue that they are not filing suit in federal court to complain of any injury caused by the state-court judgment, but rather to allege federal claims[6] regarding the injury caused by Defendants' conduct.[7] Further, Plaintiffs claim that, because they are not complaining of any injury inflicted by the state-court judgment and because their federal claims were not actually litigated, they are not asking this Court to impermissibly review and reject the state-court judgment. For these purposes, we

---

[6]As discussed more fully in subsection A.3 below, Plaintiffs could not effectively raise their civil-rights claims in the County Court because damages are unavailable in a land-use appeal in Pennsylvania.

[7]Plaintiffs quote the following from *Hoblock v. Albany County Bd. of Elections* to support this argument:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from that federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging *injury based on the employer's discrimination*. The fact that the state court chose not to remedy this injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

422 F.3d 77, 87-88 (2d Cir. 2005).

accept that the cause of action *sub judice* was unaddressed by the state court, and thus will not abstain from hearing Plaintiffs' claims on that basis.

In addition to lacking jurisdiction to hear complaints of injury rendered by a state-court judgment, "[a] federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). *Younger* abstention[8], one of the narrowly defined situations in which abstention by a federal district court is appropriate, requires that three conditions are satisfied: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims. *Id.* (citing *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1200 (3d Cir. 1992)). Presumably, Plaintiffs still have the opportunity to appeal the Commonwealth Court's decision and, therefore, the proceedings are still ongoing. Further, the state proceedings do, in one sense, implicate traditional state interests, namely the legality of municipal

---

[8] This doctrine was articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971).

land use ordinances.  However, the issues before the Court do not concern land use

from a municipal-planning perspective; rather, the issues concern overarching

constitutional considerations.  Finally, as discussed more fully in subsection A.3

below, Plaintiffs did not have an adequate opportunity to raise their federal claims

in the state proceedings because damages are unavailable as a remedy in a land-use

appeal.

Thus, for the reasons articulated in this subsection, we find that abstention is

neither warranted nor appropriate in this action, and thus we have jurisdiction to

entertain Plaintiffs' claims.

### 3.    Res Judicata

Defendants further assert that Plaintiffs claims must be dismissed under the

doctrine of *res judicata.*  The same concerns that support an assertion that district

court does not have jurisdiction to decide an action under *Rooker-Feldman*

likewise warrant analysis of *res judicata*, or claim preclusion.  *Res judicata* is not a

jurisdictional bar, but rather is an affirmative defense that prohibits litigation

between the same parties on a cause of action that was previously adjudicated on

its merits.  "*Res judicata* applies not only to claims actually litigated, but also to

claims which could have been litigated during the first proceeding if it were a part

of the same cause of action."  *Turner v. Crawford Squire Apartments III*, 449 F.3d

542, 548 (3d Cir. 2006). Pennsylvania law requires that the prior and subsequent actions have identity in the following four aspects to warrant application of *res judicata*: "(1) the thing sued upon or for; (2) the cause of action[9]; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued[10]." *Id.* (citing *Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72, 74 (Pa. 1974)).

In support of the Motion, Defendants maintain that the present action has complete identity with the land-use appeal, and thus the instant claims could have been litigated in that prior action. Defendants highlight that Plaintiffs allege the same wrongful conduct by the same parties in this action as they did before the Northumberland County Court. Although Plaintiffs do not dispute that the same underlying conduct is at issue, they do (quite disingenuously) argue that there is no identity of parties because Lime Ridge Center was added as a Plaintiff. Candidly,

---

[9]The Third Circuit noted in *Turner* that:

As to the identity of the cause of action, rather than resting upon the specific legal theory invoked, *res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims. . . . [I]n determining whether a single cause of action is present one may consider the identity of the acts complained of, the demand for recovery, the identity of the witnesses, documents, and facts alleged. A lack of identity of these facts would, of course, support the conclusion that there is no identity of cause of action.

*Id.* at 549 (quoting *McCardle v. Tronetti*, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993)).

[10]This factor appears to be undisputed, so we assume its fulfillment without articulating the relevant analysis.

no amount of consideration of, or even divination from, the Complaint has revealed to the Court the identity of Lime Ridge Center or, more importantly, their relationship to and interest in the action. As noted before, the only allegation that mentions Lime Ridge Center is the singular paragraph that alleges their office address. Indeed, Plaintiffs fail to even mention Lime Ridge Center's name in the caption of any of the three counts or in the prayer for relief. Even in an interpretation most favorable to Plaintiffs, we cannot see how the parties to this action are in fact any different than the parties to the previous action.

Defendants further argue that there was no jurisdictional obstacle to raising Plaintiffs' constitutional claims in state court, and that those claims were indeed raised. Although the facts alleged, the witnesses, the necessary evidence, and the acts complained of between the two actions are identical, the requested relief does differ. The relevant provision of the Municipalities Planning Code of Pennsylvania, 53 P.S. § 11006-A, sets forth the relief that a Court of Common Pleas may grant in a land-use appeal. The articulated relief does not include an award of damages, and it seems that damages are unavailable in a land-use appeal. *See Addiction Specialists*, 411 F.3d at 412 (citing several cases, including *Hankin Family P'ship v. Upper Merion Twp.*, 2002 U.S. Dist. LEXIS 4987, *22 (E.D. Pa. 2002) (noting that a Court of Common Pleas may only determine the validity of an

ordinance under 53 P.S. § 11006-A, but "conversely, in federal civil rights suits, a plaintiff may seek compensatory damages.")). Thus, because Plaintiffs are properly praying for damages for their claims, and because that relief was not available in the prior action, we will not enter judgment for the Defendants on *res judicata* grounds.

## B.     12(b)(6)

Defendants alternatively argue that Plaintiffs fail to state any claim upon which relief can be granted. As mentioned, Plaintiffs assert the following counts: (1) Deprivation of Procedural and Substantive Due Process Rights Afforded by the Fourteenth Amendment to the United States Constitution; (2) Deprivation of Equal Protection Afforded by the Fourteenth Amendment to the United States Constitution; and (3) Civil Conspiracy. We will address each count in turn.

### 1.     Count I – Due Process

In the Complaint, Plaintiffs assert that they were deprived of their property without due process of law. First, Plaintiffs assert that they had a property interest in the granting of a Curative Amendment. (Doc. 1 ¶ 59) ("Briar Meadows, having met the objective criteria necessary for approval of its application for a curative amendment, possess a property interest in the approval of said application."). Plaintiffs allege that the Defendants ignored the dictates of Pennsylvania law, and

thus violated both procedural and substantive due process. We will analyze Plaintiffs' procedural and substantive due process claims in order.

Although Plaintiffs fail to argue in their brief in opposition that they sufficiently stated a claim for a violation of procedural due process, we will nonetheless analyze whether they have done so. In order to assert a cause of action for a violation of procedural due process, a plaintiff must establish that a person acting under color of state law deprived him or her of an interest encompassed within the Fourteenth Amendment's protection of "life, liberty, or property", U.S. CONST. amend. XIV, and that the procedure for challenging that deprivation does not satisfy the minimum requirements under the Fourteenth Amendment. Thus, a plaintiff complaining of a deprivation of property bears the burden of demonstrating the following: (1) that he or she was deprived of a protected property interest; (2) that the defendant acted under color of state law; and (3) that the deprivation was effected without due process of law. Neither party disputes that the Defendants acted under color of state law, so we will accept that element as fulfilled.

Even assuming that Plaintiffs can assert a protected property interest in the granting of a Curative Amendment, their procedural due process claim must fail for the following reasons. It strains credulity to believe the procedures available, and

indeed utilized, did not provide Plaintiffs with adequate process of law. Plaintiffs had the opportunity to present evidence and testimony at the original hearing before the Board. Dissatisfied with the Board's denial, Plaintiffs were able to appeal the decision to the County Court. Again dissatisfied, this time with the Northumberland County Court's decision, Plaintiffs filed an appeal with the Commonwealth Court, which upheld the Northumberland County Court's decision. We can certainly understand why Plaintiffs are dissatisfied with the decisions issued at the numerous levels since after all, they lost, but we stress that the Fourteenth Amendment only guarantees adequate process in legal proceedings, not favorable outcomes. Plaintiffs exhaustively utilized every step of the legal process available to them. Therefore, because under any reasonable reading of the Complaint Plaintiffs fail to assert they were deprived of protected property without adequate procedure to challenge that denial, we must dismiss that claim.

Plaintiffs also claim in Count I of the Complaint that they were deprived of substantive due process by Defendants' actions. "To establish a substantive due process claim, a plaintiff must prove that it was deprived of a protected property interest[11] by arbitrary or capricious government action." *Sameric Corp. v. City of*

---

[11]The definition of a "protected" property interest under a substantive due process analysis is nearly as elusive as the exact nature of substantive due process itself. The Third Circuit has articulated at least one guiding principle: "whether a certain property interest embodies this 'particular quality' [worthy of protection] is not determined by reference to state

*Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998). In order to demonstrate that an action was arbitrary or capricious, a plaintiff must allege facts that demonstrate that the government defendant's conduct "shocks the conscience". *See United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 394 (3d Cir. 2003).[12] Whether conduct shocks the conscience depends upon the facts of the particular case, but is limited to "only the most egregious official conduct." *Id.* at 399-400. In land-use cases, mere allegations of bias, bad faith, or improper motives will not suffice to state a claim for deprivation of substantive due process. Rather, allegations that rise to the level of corruption or self-dealing are typically required to demonstrate that an official's actions shocks the conscience. *Eichenlaub v. Twp.*

---

law, but rather depends upon whether that interest is 'fundamental' under the United States Constitution." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (citations omitted). Thus, "[w]hile property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." *Id.* Courts therefore have extended substantive due process protection to fewer concepts of property, such as land ownership. *See, e.g. Deblasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995). Accordingly, although the status of the actual interest asserted herein is suspect, we will assume that Plaintiffs can manage to eke out a protected characterization from their ownership interest in the land.

[12]Previously in the Third Circuit, a plaintiff only had to demonstrate that the defendants acted with an improper motive or bias. However, the Third Circuit held that this line of reasoning is no longer good law in light of the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). In *United Artists Theatre Circuit, Inc. v. Township of Warrington*, then Judge Alito, writing for the majority, opined that "we see no reason why the present case should be exempted from the *Lewis* shocks-the-conscience test simply because the case concerns a land dispute." 316 F.3d at 401. Extending this stringent test to land-use cases serves to "avoid converting federal courts into super zoning tribunals." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004).

*of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004).

We find that the Complaint fails to allege facts that could establish the conduct of the Board shocks the conscience, and thus Plaintiffs fail to state a substantive due process claim. Indeed, reasonable inferences taken from the facts alleged could demonstrate a bias on the part of Defendants, but such a demonstration is insufficient to satisfy the "shocks the conscience" standard. Aside from erroneously stating the law[13], Plaintiffs argue that:

> Defendants deprived Plaintiff of its property interest . . . and the actions of Defendants shock the conscience. As alleged in the complaint, Defendants showed extreme disinterest in the proceedings, repeatedly rolled their eyes, whispered to one another and laughed. Defendant Knorr was even reading magazines during the hearing. This behavior clearly shocks the conscious in that no citizen should be treated by a government entity in this manner.

(Doc. 24 p. 19.) Although the Complaint certainly alleges rude behavior on the part of the Defendants, it does not state facts that demonstrate behavior such as corruption or impermissible self-dealing that would shock the conscience.[14] Therefore, we will dismiss Plaintiffs' substantive due process claims as well and, accordingly, dismiss Count I of the Complaint.

---

[13]"Simply put, bias, bad faith or improper motives are enough to demonstrate a violation of substantive due process." (Doc. 24 p. 19.) As discussed above, this statement is incorrect.

[14]We hasten to add that if discourteous behavior by public officials was alone sufficient to trigger substantive due process claims, federal courts would be flooded with litigation premised on that theory. Happily it is not, and we are not so burdened.

## 2.    Count II – Equal Protection

In Count II of the Complaint, Plaintiffs allege that they were denied equal protection of the law because Defendants "have treated Briar Meadows differently than similarly-situated owners of the properties surrounding the subject property." (Doc. 1 ¶ 69.)  The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying a person equal protection of the laws.  A plaintiff who, like the Plaintiffs in this action, fail to allege membership to a suspect class may nonetheless assert an equal protection claim if they can prove that defendants intentionally treated plaintiffs differently from others similarly situated, and that there was no rational basis for this disparate treatment.  In *Eichenlaub*, the Third Circuit articulated that, while the tests for substantive due process and equal protection have not converged, they are related.  The Court noted:

> Irrational and wholly arbitrary standard is doubtless difficult for a plaintiff to meet in a zoning dispute, and we do not view an equal protection claim as a device to dilute the stringent requirements needed to show a substantive due process violation.  It may be very unlikely that a claim that fails the substantive due process test will survive an equal protection approach.

385 F.3d at 287.

Plaintiffs do allege that, in some sense, they received different treatment than a similarly-situated individual.  Plaintiffs highlight that Laura Baker is a similarly-situated landowner in that she owns adjacent property, and that she is

treated differently because her property is zoned entirely for Commercial-Industrial use. But this argument is tenuous because the instant dispute involves the denial of a Curative Amendment rather than the original zoning characterization of the land, and Plaintiffs fail to allege that a similarly-situated party was granted a Curative Amendment to *change* the Zoning Plan. Even assuming, however, that this demonstrates disparate treatment, Plaintiffs fail to allege any facts that would manifest that Defendants did not have a rational basis for zoning the properties *ab initio* as Agricultural rather than Commercial-Industrial. Indeed, the lower proceedings and the allegations do demonstrate a rational basis for the Zoning Plan because, for example, the subject properties are, apparently, useful as Agricultural lots and their designation does not result in reverse spot-zoning. The entirely rational basis for designating the properties as Agricultural thus would extend to the Board's decision to deny the Curative Amendment to change the properties from Agricultural to Commercial-Industrial. Therefore, Plaintiffs fail to sufficiently allege an equal protection claim, and we will accordingly dismiss Count II of the Complaint.

### 3. Count III – Civil Conspiracy

Count III asserts a claim for civil conspiracy.[15]  To state a cause of action for civil conspiracy, "the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *General Refractories v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003). "Actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor." *Levin v. Upper Makefield Twp.*, 90 Fed. Appx. 653, 667 (3d Cir. 2004).  Candidly, the Court is hard-pressed to understand how the allegations as stated in the Complaint could support such a claim, but will nonetheless analyze the claim in the light most favorable to Plaintiffs.

    Plaintiffs allege that the Defendants engaged in a conspiracy to deprive Briar Meadows of any realistic chance to obtain approval of the application. Plaintiffs claim that Defendants outrageously, willfully, and wantonly grossly abused their authority by denying the application for a Curative Amendment because, according to Plaintiffs, the denial was intended to ensure that there would

---

[15]Based upon the drafting of the Complaint, it is difficult to determine whether Plaintiffs are asserting a civil conspiracy under Pennsylvania law, or a conspiracy to violate Plaintiffs' constitutional rights under § 1983.  As discussed below, Plaintiffs' claim fails under both federal and state law.

be no adverse impact on Laura Baker's businesses.

Defendants fail to address Count III in their Brief in Support of the Motion (Doc. 12) or their Reply (Doc. 25). In spite of Defendants' careless drafting, however, we are bound to dismiss Count III as well because Plaintiffs have failed to state a claim. Defendants note that, at best, "Plaintiffs have merely presented a common land-use claim, dressed in constitutional trappings". (Doc. 25 pp. 4-5.) As discussed above, the Complaint alleges no constitutional violation or any other violation of federal law or standards. Further, Plaintiffs fail to allege that Defendants committed any tort cognizable under Pennsylvania law. Because Plaintiffs fail to allege any such violation, they likewise fail to demonstrate an "independent wrong" necessary to support a claim of civil conspiracy. Therefore, we shall dismiss Count III of the Complaint as well and, accordingly, dismiss the Complaint in its entirety.

## V.    CONCLUSION

For the reasons articulated in this Memorandum, we find that the Court has jurisdiction over this action. We further find, however, that Plaintiffs have failed to state claims for violations of procedural and substantive due process, for a deprivation of equal protection of the law, or for civil conspiracy upon which relief could be granted. We come to this conclusion based upon the facts that are alleged

and, essentially, are undisputed, and thus find that granting leave to amend the Complaint would be futile. We decline to act as the "super zoning tribunal" discouraged by the Third Circuit in *Eichenlaub*. Therefore, we shall dismiss the Complaint on its merits and close this case. An appropriate Order shall enter.